UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTOINE ABDIAS,

                Plaintiff,

                                           Case No. 2:24-cv-110

v.

                                           Honorable Maarten Vermaat

CATHERINE S. BAUMAN et al.,

                Defendants.

_____/

## <u>OPINION</u>

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>Discussion</u>

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following LMF personnel in their individual and official capacities: Warden Catherine S. Bauman; and Assistant Deputy Wardens P. Hubble and Unknown Contreras. (Compl., ECF No. 1, PageID.1–3.)

_____

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis*., 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on February 19, 2020, a well-known gang member (inmate Washington) "assaulted" and "beat" Plaintiff at LMF.[2] (*Id.*, PageID.7.) As a result of this attack, Plaintiff had a dislocated left shoulder, which was "put back in place" at Munising Hospital. (*Id.*) Subsequently, on March 3, 2020, Plaintiff was transferred to the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The following day, March 4, 2020, "some of the Bloods gang members [at URF] found out about what happened between Plaintiff and [inmate] Washington" at LMF, and the Bloods gang members at URF "were planning to stab and kill Plaintiff." (*Id.*) Plaintiff advised "the guards [at URF] and Plaintiff asked the guards to take him to segregation because the Bloods were after him." (*Id.*) Plaintiff was then held in segregation at URF from March 4, 2020, to July 12, 2021.[3] (*Id.*) Plaintiff was then transferred back to LMF. (*Id.*) Plaintiff states that inmate Washington was still housed at LMF in the Maple Unit. (*Id.*)

Upon arrival at LMF, Plaintiff asked Defendant Contreras why Plaintiff was allowed to be transferred back to LMF. (*Id.*, PageID.6.) In response, Defendant Contreras asked: "are we going to have a problem?" (*Id.*) Plaintiff does not allege any facts about what, if anything, Plaintiff said in response to Defendant Contreras. (*See id.*) Defendant Contreras assigned Plaintiff to the Pine Unit. (*Id.*, PageID.7.) Plaintiff claims that inmate Washington "found out that Plaintiff was in [the] Pine Unit," and on July 15, 2021, inmate Washington "ordered two of his Blood gang affiliates to

---

[2] In this opinion, the Court corrects the capitalization and spelling in quotations from Plaintiff's complaint.

[3] It appears that Plaintiff provides this information about the events preceding July 2021 to provide context for his claims against the named Defendants in this action. To the extent that Plaintiff seeks to hold Defendants liable for the events prior to July of 2021, it appears these claims would be untimely, and he would fail to state any claim against the named Defendants regarding the pre-July 2021 events because he fails to name Defendants in his pre-July 2021 factual allegations. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

stab and kill Plaintiff." (*Id.*) On that date, two "Blood gang members chased Plaintiff around the big yard [and] tried to stab and kill Plaintiff until the guards intervened and placed both Blood gang members and Plaintiff in handcuffs." (*Id.*) Plaintiff was then placed in segregation, where he remained until June 22, 2022, when he was transferred to the Oaks Correctional Facility. (*Id.*)

Plaintiff claims that the July 15, 2021, incident could have been prevented if Defendants Contreras and Hubble "didn't disregard an excessive threat and serious risk of harm to Plaintiff['s] safety." (*Id.*, PageID.8.) Plaintiff alleges that Defendants Contreras and Hubble "knew of Plaintiff['s] past incident between Plaintiff and [inmate] Washington," and "as a veteran MDOC official, [Defendant] Contreras knew of [inmate] Washington['s] influence to order his gang affiliates to carry out random hits." (*Id.*) Plaintiff claims that despite knowing of "the prison gang culture," Defendants Contreras, Hubble, and Bauman "allowed Plaintiff to be transferred back to [LMF] . . . knowing the fact that [inmate] Washington was still housed at [LMF] Maple Housing Unit." (*Id.*) Plaintiff further claims that Defendants Bauman, Hubble, and Contreras were "not supposed to place him at the same facility at the same time with [inmate] Washington knowing that Washington had previously assaulted [Plaintiff]." (*Id.*, PageID.9.)[4]

Based on the foregoing allegations, Plaintiff avers that Defendants violated his Eighth Amendment rights by failing to protect him. (*Id.*, PageID.4.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.10.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[4] Plaintiff also submitted a supplement to his complaint, consisting of copies of grievances that he submitted regarding the matter. (ECF Nos. 5, 5-1.) The grievance response indicates that Plaintiff's grievance was rejected as untimely. (*See* ECF No. 5-1, PageID.37.)

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Official Capacity Claims**

Plaintiff sues Defendants in their individual and official capacities. (Compl., ECF No. 1, PageID.2–3.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune from suit in the federal courts under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.10.) However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff's official capacity claims against Defendants will be dismissed.

7

**B.      Eighth Amendment Claims**

Plaintiff alleges that Defendants Bauman, Hubble, and Contreras violated his Eighth Amendment rights by failing to protect him from two Blood gang members on July 15, 2021. (*See* Compl., ECF No. 1, PageID.4, 7.)

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Id.* at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Here, Plaintiff alleges that on February 19, 2020, inmate Washington, a well-known gang member, "assaulted" and "beat" Plaintiff at LMF. (Compl., ECF No. 1, PageID.7.) Thereafter, on March 3, 2020, Plaintiff was transferred to URF, and the following day, "some of the Bloods gang members [at URF] found out about what happened between Plaintiff and [inmate] Washington" at LMF, and the Bloods gang members at URF "were planning to stab and kill Plaintiff." (*Id.*) Plaintiff advised the guards at URF, and he was then placed in segregation at URF from March 4,

8

2020, to July 12, 2021.[5] (*Id.*) Plaintiff was then transferred back to LMF, and upon his arrival, he asked Defendant Contreras why he was transferred back to LMF. (*Id.*, PageID.6.) Defendant Contreras asked: "are we going to have a problem?" (*Id.*) Plaintiff does not allege any facts about what, if anything, Plaintiff said in response to Defendant Contreras. (*See id.*) Defendant Contreras assigned Plaintiff to the Pine Unit; whereas inmate Washington, the inmate who previously attacked Plaintiff at LMF, was assigned to the Maple Unit. (*Id.*, PageID.7.) Three days later, Plaintiff claims that inmate Washington "found out that Plaintiff was in [the] Pine Unit," and on July 15, 2021, inmate Washington "ordered two of his Blood gang affiliates to stab and kill Plaintiff." (*Id.*) On that date, two "Blood gang members chased Plaintiff around the big yard [and] tried to stab and kill Plaintiff until the guards intervened and placed both Blood gang members and Plaintiff in handcuffs." (*Id.*) Plaintiff was then placed in segregation, and he remained there until June 22, 2022, when he was transferred to the Oaks Correctional Facility. (*Id.*)

Plaintiff seeks to hold Defendants Contreras, Hubble, and Bauman liable for the July 15, 2021, attempted attack by the two gang members, claiming that they "knew of Plaintiff['s] past incident between Plaintiff and [inmate] Washington," and as "veteran MDOC official[s]," they "knew of [inmate] Washington['s] influence to order his gang affiliates to carry out random hits." (*Id.*, PageID.8.) Plaintiff further claims that despite knowing of "the prison gang culture," Defendants Contreras, Hubble, and Bauman "allowed Plaintiff to be transferred back to [LMF] . . . knowing the fact that [inmate] Washington was still housed at [LMF] Maple Housing Unit." (*Id.*)

---

[5] As noted herein, it appears that Plaintiff provides this information about the preceding events as background for his claims against the named Defendants in this action. To the extent that Plaintiff seeks to hold Defendants liable for the events prior to July of 2021, these claims would likely be untimely. And, regardless, Plaintiff would fail to state any claim against the named Defendants regarding the events that occurred before July of 2021 because he fails to name Defendants in his pre-July 2021 factual allegations. *See supra* note 3.

Additionally, Plaintiff claims that Defendants Bauman, Hubble, and Contreras were "not supposed to place him at the same facility at the same time with [inmate] Washington knowing that Washington had previously assaulted [Plaintiff]." (*Id.*, PageID.9.)

The Court does not minimize Plaintiff's experience; however, based on the facts alleged by Plaintiff in his complaint, he fails to state an Eighth Amendment failure-to-protect claim against Defendants. Specifically, as explained below, the factual allegations do not show that Defendants knew that the two gang members who attempted to attack Plaintiff on July 15, 2021, posed any risk of harm prior to the attack, let alone a substantial risk of harm.

Plaintiff claims that Defendants knew of the 2020 incident between Plaintiff and inmate Washington and that they were "not supposed to place him at the same facility at the same time with [inmate] Washington." (*Id.*) As an initial matter, although Plaintiff claims in a conclusory manner that Defendants knew of the 2020 incident, Plaintiff fails to allege any *facts* to show that these Defendants in fact knew about the prior incident. Moreover, even setting this issue aside, although it is clear that Plaintiff believes he was not supposed to be housed at the same facility as inmate Washington, this belief, on its own, is insufficient to state an Eighth Amendment claim. "[P]risons are inherently dangerous places." *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (citation omitted); *Reedy*, 988 F.3d at 912. The facts alleged in the complaint show that upon Plaintiff's transfer to LMF, he was placed in the Pine Unit, and inmate Washington—Plaintiff's prior attacker—was housed in a different unit. (Compl., ECF No. 1, PageID.7.) Plaintiff does not allege that this housing arrangement resulted in any interaction with inmate Washington. Under these circumstances, Plaintiff fails to show that

Defendants disregarded a substantial risk of harm to Plaintiff when they placed Plaintiff in a *different* housing unit than his prior attacker.

Plaintiff also claims that Defendants "knew of [inmate] Washington['s] influence to order his gang affiliates to carry out random hits," alleging that due to their knowledge of "the prison gang culture," Plaintiff should not have been transferred back to LMF. (*Id.*, PageID.8.) Even assuming that Defendants knew about the prior incident between Plaintiff and inmate Washington, Plaintiff fails to allege any facts showing that Defendants subjectively knew that the other two inmates, neither of whom had previously attacked Plaintiff, posed a substantial risk of harm to him. For example, Plaintiff does not allege that he advised anyone, let alone Defendants, of any risk of harm that Plaintiff faced upon his return to LMF. Indeed, Plaintiff only alleges that he personally interacted with Defendant Contreras upon Plaintiff's arrival at LMF. During this interaction, Plaintiff alleges that he asked Defendant Contreras why Plaintiff was allowed to be transferred back to LMF, and Defendant Contreras asked: "are we going to have a problem?" (*Id.*, PageID.6.) Plaintiff does not allege any facts about what, if anything, Plaintiff said in response to Defendant Contreras. (*See id.*) Under these circumstances, Plaintiff fails to show that Defendant Contreras, or any of the other Defendants, knew that he faced a substantial risk of harm in the Pine Unit at LMF, let alone that they knew of such a risk and disregarded it.

Moreover, to the extent that Plaintiff seeks to hold Defendants liable due to their supervisory positions, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene*

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor

can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*,

310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability

may not be imposed simply because a supervisor denied an administrative grievance or failed to

act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee*,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300);

*see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*,

995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants encouraged or condoned

the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct.

Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that

Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims

against Defendants will be dismissed.[6]

---

[6] Plaintiff also alleges that if he had not been transferred back to LMF, there would not have been
an attempted attack on him by the other two inmates, and if not for the attempted attack, he would
not have been in segregation at LMF from the date of the attempted attack, July 15, 2021, until
June 22, 2022, when he was transferred to the Oaks Correctional Facility. (*See* Compl., ECF No. 1,

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis, e.g.*,

---

PageID.9.) Plaintiff does not specifically raise any claim regarding his detention in segregation. However, to the extent that Plaintiff intended to raise any claim against the named Defendants regarding his detention in segregation, he fails to state any such claim because he fails to allege any facts showing that the named Defendants were involved in either Plaintiff's initial placement in segregation or his continued placement in segregation. Because Plaintiff fails to allege any facts showing that the named Defendants had any personal involvement in, or personal knowledge regarding, Plaintiff's housing placement, and as discussed herein, Plaintiff cannot hold Defendants liable solely due to their supervisory positions, Plaintiff fails to state any claim against Defendants regarding his detention in segregation. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

13

by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00

appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated:     September 26, 2024          /s/ *Maarten Vermaat*
                                                   Maarten Vermaat
                                                   United States Magistrate Judge